UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

TINA SCHMIDT
W7104 Explorer Drive
Fond du Lac, Wisconsin 54937

      Plaintiff,

      v.            Case No.: 14-cv- 1318

MERCURY MARINE      **JURY TRIAL DEMANDED**
W6250 Pioneer Road
P.O. Box 1939
Fond du Lac, Wisconsin 54936

      Defendant.

---

## COMPLAINT

---

COMES NOW Plaintiff, Tina Schmidt, by her counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendant, alleges and shows to the court as follows:

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves a federal question under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601, *et seq.* ("FMLA") and the Americans with Disabilities Act ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101, *et. seq.*

2. The unlawful employment practices of which Plaintiff complains occurred within the Eastern District of Wisconsin and therefore venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).

3. Plaintiff, Tina Schmidt, is an Adult female resident of the State of Wisconsin residing in Fond du Lac County with a post office address of W7104 Explorer Drive, Fond du Lac, Wisconsin 54937.

4. Defendant, Mercury Marine, was, at all material times herein, a Wisconsin corporation with a principal office address of W6250 Pioneer Road, P.O. Box 1939, Fond du Lac, Wisconsin 54936.

### Ms. Schmidt's Medical Condition

5. In approximately June 2010, Ms. Schmidt was diagnosed with and began suffering from severe cluster headaches.

6. Ms. Schmidt's cluster headaches are severe headaches that usually involve extreme pain to one side of her head.

7. Ms. Schmidt's cluster headaches are similar to severe migraine headaches.

8. Ms. Schmidt's cluster headaches are primarily hereditary.

9. Ms. Schmidt's cluster headaches are permanent and there is no known cure.

10. Ms. Schmidt's cluster headaches cause her severe and physical pain in her head, one or both eyes, face, head, neck, back, and shoulders.

11. Since approximately July 2010, Ms. Schmidt suffers cluster headaches on an episodic basis, suffering approximately five to fifteen cluster headaches per day for a duration of anywhere from approximately a few weeks to a few months.

12. When experiencing cluster headaches and in an effort to combat their negative symptoms and effects, Ms. Schmidt sees a doctor, takes medication, and uses oxygen.

13. Ms. Schmidt's cluster headaches substantially, negatively, and generally affect her ability to sleep, work, concentrate, see, eat, communicate, and function, among other things.

14. Ms. Schmidt's cluster headaches substantially limit her brain functioning.

15. As of the date of this Complaint, Ms. Schmidt continues to episodically suffer from cluster headaches.

**Ms. Schmidt's Employment at Defendant**

16. In approximately July 2011, Defendant hired Ms. Schmidt as an Inspector.

17. Ms. Schmidt held the position of Inspector with Defendant during the entirety of her employment with it.

18. During her employment with Defendant as an Inspector, Ms. Schmidt's primary job duties involved masking and hanging parts to be painted, inspecting painted parts, sanding parts, fixing flaws on parts, getting parts ready for shipping, and data entry of parts after they were painted.

19. During her employment with Defendant as an Inspector, Ms. Schmidt's direct supervisor was Michael Lenz, Supervisor. Lenz reported directly to James Steffes, Manager.

20. In approximately November 2013, Defendant approved Ms. Schmidt's request for intermittent FMLA leave for her cluster headaches.

21. In approximately February 2014, Defendant approved Ms. Schmidt's request for continuous FMLA leave for her cluster headaches.

22. In approximately February 2014, Defendant received an FMLA "Certification of Health Care Provider For Employee's Serious Health Condition" form that was dated February 6, 2014, completed on behalf of Ms. Schmidt, and signed by Robert Glisczinski, A.P.N.P., M.S.N., N.P.-C, Ms. Schmidt's treating nurse practitioner (hereinafter "Ms. Schmidt's February 6, 2014 FMLA form").

23. Ms. Schmidt's February 6, 2014 FMLA form stated "Approx. 2010" as the "Approximate date the condition commenced."

24. Ms. Schmidt's February 6, 2014 FMLA form stated "Since 2010; most recent 10/9/13; 11/01/13," as the "Date(s) you treated the patient for condition."

25. Ms. Schmidt's February 6, 2014 FMLA form stated, "Yes" to the question, "Will the patient need to have treatment visits at least twice per year due to the condition?"

26. Ms. Schmidt's February 6, 2014 FMLA form stated, "Yes" to the question, "Was medication, other than over-the-counter medication, prescribed?"

27. Ms. Schmidt's February 6, 2014 FMLA form stated that she was "[o]nly unable to work when in a period of cluster headache."

28. Ms. Schmidt's February 6, 2014 FMLA form stated the following: "Cluster headaches are severe debilitating headaches that occur over a prolonged period of time (a cluster). She will have a long period without headaches [and] then can have a week or so of a cluster (difficult to predict)."

29. Ms. Schmidt's February 6, 2014 FMLA form stated that it was medically necessary for Ms. Schmidt to be absent from work during "the flare-ups" because, "Cluster headaches are debilitating [and] therefore will be unable to perform work during the cluster."

30. Ms. Schmidt's February 6, 2014 FMLA form stated, regarding the frequency of her cluster headaches: one episode per month, five to seven days per episode.

31. In approximately February 2014, Defendant received an "FMLA/WFMLA Leave of Absence Request Form," signed by Ms. Schmidt and dated February 20, 2014, requesting "continuous" leave for her "own serious health condition" commencing on February 20, 2014.

32. On or about February 19, 2014 was Ms. Schmidt's last day of work at Defendant.

33. On or about February 20, 2014, Ms. Schmidt began utilizing continuous FMLA leave for her own serious health condition, cluster headaches.

34. On or about March 5, 2014, Ms. Schmidt saw her treating physician, Xian-feng Gu, M.D., a neurologist at Lakeside Neurocare, which is located at 430 East Division Street, Fond du Lac, Wisconsin 54935.

35. Defendant received a doctor's note from Ms. Schmidt's appointment with Dr. Gu on March 5, 2014.

36. The doctor's note from Ms. Schmidt's appointment with Dr. Gu on March 5, 2014 stated, among other things, that her current episode of cluster headaches "started several months ago," that she could not sleep due to the pain of her cluster headaches, that she has not been able to work in the preceding two weeks because of her cluster headaches, that she was prescribed and taking medication to combat her cluster headaches, and that she was scheduled for a follow-up appointment in three weeks.

37. Defendant received an FMLA "Certification of Health Care Provider For Employee's Serious Health Condition" form, dated March 5, 2014 and signed by Dr. Gu (hereinafter "Ms. Schmidt's March 6, 2014 FMLA form").

38. Ms. Schmidt's March 6, 2014 FMLA form stated "2010" as the "Approximate date the condition commenced."

39. Ms. Schmidt's March 6, 2014 FMLA form stated "3/5/14" as the date Dr. Gu "treated the patient for condition."

40. Ms. Schmidt's March 6, 2014 FMLA form stated "Yes" to the question, "Will the patient need to have treatment visits at least twice per year due to the condition?"

41. Ms. Schmidt's March 6, 2014 FMLA form stated "Yes" to the question, "Was medication, other than over-the-counter medication, prescribed?"

42. Ms. Schmidt's March 6, 2014 FMLA form stated that Ms. Schmidt was, "[u]nable to function due to severe headaches," had "several severe headaches daily, unable to concentrate or function," and estimated "the beginning and ending dates for the period of incapacity" as "2/20/14 through 3/26/14."

43. Ms. Schmidt's March 6, 2014 FMLA form stated that she would have a follow-up appointment with Dr. Gu "in 3 weeks."

44. In approximately March 2014, Defendant, specifically Whitney Haas, Human Resources, sent a "Family and Medical Leave Act – Employer Response Form," dated March 6, 2014, to Ms. Schmidt stating that Defendant approved Ms. Schmidt's request for FMLA leave from **2/20/14 thru 3/26/14 (continuous)**." (emphasis in original.)

45. During Ms. Schmidt's employment at Defendant, it was customary or common practice for Defendant's employees who were on continuous or extended medical leaves or leaves of absence to contact or communicate with Bonna Badtke, an employee in Defendant's Occupational Health Department, regarding their leave and return to work status.

46. During Ms. Schmidt's employment at Defendant, it was customary or common practice for Defendant's employees who were on intermittent medical leaves or leaves of absence to contact or communicate with Defendant's Human Resources regarding their leave and return to work status.

47. On March 18, 2014 at 2:13 p.m., Badtke received a phone call from Ms. Schmidt (hereinafter "the March 18, 2014 phone call").

48. During the March 18, 2014 phone call, Ms. Schmidt told Badtke that she was still experiencing her cluster headaches, that, because of this, she could not return to work at Defendant on or before Mach 26, 2014, and that she would keep her (Badtke) updated regarding her return to work status. Badtke replied, "Great. I'll write it down. Just keep me updated," or words to that effect.

49. On March 20, 2014 at 1:13 p.m., Badtke received a phone call from Ms. Schmidt (hereinafter "the March 20, 2014 phone call").

50. During the March 20, 2014 phone call, Ms. Schmidt told Badtke that she was still experiencing her cluster headaches.

51. During the March 20, 2014 phone call, Ms. Schmidt and Badtke discussed Ms. Schmidt's short-term disability ("STD") claim with Cigna Group Insurance ("CIGNA").

52. On March 21, 2014 at 12:50 p.m., Badtke received a phone call from Ms. Schmidt (hereinafter "the March 21, 2014 phone call").

53. During the March 21, 2014 phone call, Ms. Schmidt told Badtke that she would be off of work at Defendant for approximately three more weeks and that she was scheduled to see her doctor on March 31, 2014. Badtke responded, "Thanks. Keep me updated," or words to that effect.

54. On March 21, 2014 at 3:16 p.m., Lenz, Ms. Schmidt's supervisor, called Ms. Schmidt (hereinafter "the March 21, 2014 phone call from Lenz").

55. During the March 21, 2014 phone call from Lenz, Ms. Schmidt told Lenz that she would be off of work at Defendant for approximately three more weeks and that she was scheduled to see her doctor on March 31, 2014. Lenz told Ms. Schmidt that he missed her and to get better.

56. During Ms. Schmidt's employment with Defendant, CIGNA was Defendant's third-party benefits administrator, administering life, accident, and disability (short and long term

disability) insurance eligibility and benefits on behalf of Defendant for Defendant's employees.

57. During Ms. Schmidt's employment with Defendant, Defendant's employees, including Ms. Schmidt, often communicated and interacted directly either with Defendant's Occupational Health Department or CIGNA regarding life, accident, and disability insurance eligibility and benefits.

58. During Ms. Schmidt's employment with Defendant, CIGNA was Defendant's agent with regard to Defendant's employees' life, accident, and disability insurance eligibility and benefits.

59. In approximately March 2014, Ms. Schmidt commenced a claim for STD benefits from Defendant via CIGNA.

60. On or about March 21, 2014, Defendant and/or CIGNA received a "Disability Management Solutions Medical Request Form," on behalf of Ms. Schmidt, dated March 21, 2014, and signed by Dr. Gu (hereinafter "March 21, 2014 Medical Request Form").

61. The March 21, 2014 Medical Request Form stated that Ms. Schmidt's "primary diagnosis" was "cluster migraine headaches" and that Ms. Schmidt's current cluster headaches were "unrelieved by meds" and that Ms. Schmidt was "unable to work during these headaches."

62. The March 21, 2014 Medical Request Form stated that Ms. Schmidt was "to remain off work for 3 weeks" and would "be reevaluated at next appt."

63. On or about March 17, 2014 and/or on or about March 24, 2014, CIGNA received paperwork and information regarding Ms. Schmidt's STD claim related to her cluster headaches.

64. On March 31, 2014 at 11:31 a.m., Badtke received an email from Ms. Schmidt stating that CIGNA had received her medical documentation and inquiring about the status of her STD claim.

65. On or about March 31, 2014, Ms. Schmidt had a follow-up appointment with Dr. Gu.

66. Defendant received the doctor's note from Ms. Schmidt's follow-up appointment with Dr. Gu on March 31, 2014.

67. The doctor's note from Ms. Schmidt's follow-up appointment with Dr. Gu on March 31, 2014 stated, among other things, that her cluster headaches were occurring approximately eight to ten times per night, that she was trying and experimenting with different prescription medications to combat the negative effects of her cluster headaches, and that she was scheduled for a follow-up appointment in two weeks.

68. On April 2, 2014 at 2:59 p.m., Badtke received a voicemail message from Ms. Schmidt, during which Ms. Schmidt updated Badtke on her cluster headaches and her return to work status, and informed Badtke that she was scheduled for a follow-up appointment with her doctor on April 14, 2014.

69. On or about April 3, 2014, CIGNA denied Ms. Schmidt's STD claim.

70. On April 8, 2014 at 12:53 p.m., Badtke called Ms. Schmidt. Ms. Schmidt updated Badtke on her cluster headache and her return to work status, and told Badtke that she was scheduled for a follow-up appointment with her doctor on April 14, 2014.

71. On or about April 9, 2014, Defendant or Badtke received a written appeal of CIGNA's denial of Ms. Schmidt's STD claim.

72. On or about April 9, 2014, CIGNA received a written appeal of CIGNA's denial of Ms. Schmidt's STD claim.

73. On or about April 14, 2014, Ms. Schmidt had a follow-up appointment with Dr. Gu.

74. The doctor's note from Ms. Schmidt's follow-up appointment with Dr. Gu on April 14, 2014 stated, among other things, that she was experiencing severe cluster headaches, that during the day she cannot function, and that she has been incapacitated due to her cluster headaches since February 19, 2014.

75. Upon information and belief and from approximately March 18, 2014 to April 14, 2014, Badtke was in direct communication with CIGNA regarding Ms. Schmidt's STD claim.

76. From approximately March 18, 2014 to April 14, 2014, Ms. Schmidt communicated directly with Badtke regarding her cluster headaches, her doctor's appointments for her cluster headaches, her need for additional leave for her cluster headaches, and her return to work status from leave for her cluster headaches.

77. On or about April 15, 2014, Defendant terminated Ms. Schmidt's employment.

78. Defendant terminated Ms. Schmidt's employment with it via letter from Steve Zurawski, Human Resources, dated April 15, 2014 (hereinafter "Ms. Schmidt's termination letter").

79. Ms. Schmidt's termination letter stated in part:

> This is to confirm that your employment with Mercury Marine has been terminated effective April 15, 2014 due to your unavailability for work.
>
> According to the paperwork submitted to CIGNA regarding your medical leave, you were to return to work on Monday March 26, 2014. As of Tuesday April 15, 2014, you have not returned to work nor have you notified the company of the status of your leave. Numerous attempts have been made to contact you including messages left on your phone on April 9th, April 10th, April 11th, and April 14th. Since our attempts have been unsuccessful, we have determined that you have voluntarily abandoned your position.
>
> If there are extenuating circumstances as to why you have been unable to contact us or return to work, place contact me later [sic] than April 22, 2014. I can be reached at (920) 929-5799.

80. Zurawski contacted Ms. Schmidt at the wrong phone number as referenced in Ms. Schmidt's termination letter. In other words, the phone number that Zurawski dialed or used to allegedly call Ms. Schmidt was not Ms. Schmidt's then-current "phone" number.

81. Ms. Schmidt's phone number in April 2014 was the same phone number she had since approximately September 2013.

82. In approximately November 2013, Defendant contacted Ms. Schmidt at her correct and then-current phone number.

83. On or about February 20, 2014 and February 21, 2014, Zurawski contacted Ms. Schmidt at her correct and then-current phone number.

84. In April 2014, Zurawski had Ms. Schmidt's correct and then-current phone number, which was the same phone number he had used to contact her in February 2014.

85. On or about April 16, 2014, Badtke received the doctor's note from Ms. Schmidt's follow-up appointment with Dr. Gu on April 14, 2014.

86. On or about April 16, 17, and/or 18, 2014, Badtke and/or Zurawski received phone calls and voicemail messages from Ms. Schmidt.

87. On or about April 19, 2014, Ms. Schmidt was released to return to work without restrictions.

88. On April 22, 2014 at 11:50 a.m., Zurawski called Ms. Schmidt (hereinafter "the April 22, 2014 phone call").

89. During the April 22, 2014 phone call, Zurawski admitted that he called the wrong phone number as referenced in Ms. Schmidt's termination letter.

90. During the April 22, 2014 phone call, Zurawski apologized to Ms. Schmidt for having and calling the wrong phone number as referenced in Ms. Schmidt's termination letter.

91. During the April 22, 2014 phone call, Zurawski told Ms. Schmidt that her employment at Defendant was still terminated.

92. During the April 22, 2014 phone call, Zurawski told Ms. Schmidt, regarding her still being terminated from Defendant, "there's nothing I can do about it," and "it's not our problem," or words to that effect.

93. Subsequent to the April 22, 2014 phone call, Defendant has not contacted or communicated with Ms. Schmidt regarding her employment (or termination from employment) at it.

94. At the time of her termination, Ms. Schmidt was earning $14.70 per hour, in addition to other employment benefits and/or insurance, and working approximately fifty (50) hours per week.

95. Prior to Defendant's termination of Ms. Schmidt, Defendant knew or was aware that Ms. Schmidt suffered from cluster headaches.

96. Defendant is a covered employer for purposes of the FMLA.

97. During Ms. Schmidt's employment at Defendant, she did not meet the criteria under 29 C.F.R. § 825.217(a), which defines "key employee" as used in the FMLA.

98. During Ms. Schmidt's employment at Defendant, Defendant employed at least 50 employees within 75 miles of Ms. Schmidt's work site.

99. At the time of Ms. Schmidt's FMLA leave requests during her employment at Defendant, she had been employed at Defendant for 12 non-consecutive months and had worked at least 1250 hours during those 12 months.

100. During her employment at Defendant, Ms. Schmidt did not exceed the amount of FMLA leave for any FMLA leave entitlement period.

101. Subsequent to her termination from Defendant, Ms. Schmidt filed a complaint with the Equal Employment Opportunity Commission – Milwaukee Area Office ("EEOC"), designated as EEOC Charge No. 443-2014-01232C, alleging claims of disability discrimination and failure to accommodate.

102. The EEOC issued Ms. Schmidt a Notice of Right to Sue on Charge No. 443-2014-01232C, dated August 27, 2014.

103. Ms. Schmidt has exhausted all administrative remedies and satisfied all conditions precedent prior to bringing this action.

## FIRST CAUSE OF ACTION – FMLA INTERFERENCE

104. Ms. Schmidt re-alleges and incorporates paragraphs 1-103 of this complaint by reference.

105. Defendant intentionally interfered with Ms. Schmidt's rights in violation of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601 *et seq*.

106. Defendant intentionally discriminated against Ms. Schmidt in the terms and conditions of her employment and by terminating her employment in violation of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601 *et seq*.

107. As a result of Defendant's intentional violation of the FMLA, Ms. Schmidt has suffered damages in the form of loss of wages and other employment benefits and insurance.

## SECOND CAUSE OF ACTION – FMLA RETALIATION

108. Ms. Schmidt re-alleges and incorporates paragraphs 1-107 of this complaint by reference.

109. Defendant retaliated against Ms. Schmidt by terminating her employment for exercising her rights under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601 *et seq*.

110. As a result of Defendant's intentional violation of the FMLA, Ms. Schmidt has suffered damages in the form of loss of wages and other employment benefits and insurance.

## THIRD CAUSE OF ACTION – DISABILITY DISCRIMINATION

111. Ms. Schmidt re-alleges and incorporates paragraphs 1-110 of this complaint by reference.

112. Defendant intentionally discriminated against Ms. Schmidt on the basis of her disability by terminating her employment based on her disability in reckless disregard for her federally protected rights under the Americans with Disabilities Act, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §§ 12101, *et. seq*.

113. Defendant intentionally discriminated against Ms. Schmidt by failing to reasonably accommodate her disability and by denying her an extended medical leave of absence and/or time off of work at Defendant in reckless disregard for her federally protected rights under the Americans with Disabilities Act, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §§ 12101, *et. seq*.

114. As a result of Defendant's intentional discrimination, Ms. Schmidt has suffered damages in the form of lost wages and benefits, humiliation, embarrassment, degradation, emotional distress, pain and suffering, and attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, liquidated damages, compensatory damages, punitive damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

2. Grant to Plaintiff attorneys' fees, costs, and disbursements as provided by statute; and

3. Grant to Plaintiff whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES.**

Dated this 21st day of October, 2014.

                                                  WALCHESKE & LUZI, LLC
                                                  Counsel for Plaintiff

                                                  **s/ *Scott S. Luzi*_____**
                                                  James A. Walcheske, State Bar No. 1065635
                                                  Scott S. Luzi, State Bar No. 1067405
                                                  Jesse R. Dill, State Bar No. 1061704

WALCHESKE & LUZI, LLC
200 South Executive Drive, Suite 101
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com
jdill@walcheskeluzi.com